UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT D. SANGO,

                Plaintiff,

v.

UNKNOWN NAEYEART et al.,

                Defendants.
_____/

Case No. 2:22-cv-166

Honorable Robert J. Jonker

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has not explicitly sought leave to proceed *in forma pauperis*, but has submitted a financial affidavit (ECF No. 4), presumably in support of such a request. Nevertheless, because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380–81 (6th Cir. 2002).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." *See* https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

2

Plaintiff has been an active litigant in the federal courts in Michigan. In far more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Sango v. Place*, No. 2:16-cv-136 (W.D. Mich. July 6, 2016); *Sango v. Lewis et al.*, No. 1:14-cv-342 (W.D. Mich. July 18, 2014); *Sango v. Huss*, No. 1:14-cv-2 (W.D. Mich. June 12, 2014); *Sango v. Miniard et al.*, No. 1:14-cv-344 (W.D. Mich. June 10, 2014); *Sango v. Hammond et al.*, No. 1:14-cv-283 (W.D. Mich. May 6, 2014); *Sango v. Novak*, No. 1:14-cv-343 (W.D. Mich. Apr. 23, 2014); *Sango v. Goinns et al*, No. 2:20-cv-205 (W.D. Mich. Oct. 15, 2020). In addition, Plaintiff repeatedly has been denied leave to proceed *in forma pauperis* in this Court and in the Eastern District of Michigan because he has three strikes. *See Sango v. Curtis et al*., No. 1:14-cv-823 (W.D. Mich. Aug. 14, 2014); *Sango v. Wakley et al*., 1:14-cv-703 (W.D. Mich. July 8, 2014); *Sango v. Grand et al.*, No. 2:14-cv-14060 (E.D. Mich. Oct. 31, 2014); *Sango v. Mich. State Office of Admin. Hr'gs & Rules et al*., No. 1:14-cv-1272 (W.D. Mich. Jan. 13, 2015); *Sango v. Eryer et al.*, No. 1:15-cv-71 (W.D. Mich. Feb. 12, 2015); *Sango v. Nevins et al.*, No. 1:15-cv-179 (W.D. Mich. Mar. 3, 2015); *Sango v. Watkins*, No. 1:15-cv-221 (W.D. Mich. Mar. 12, 2015); *Sango v. Joiner*, No. 1:15-cv-232 (W.D. Mich. Mar. 23, 2015); *Sango v. Aramark et al.*, No. 1:15-cv-247 (W.D. Mich. Apr. 13, 2015); *Sango v. Bastain*, No. 2:16-cv-15 (W.D. Mich. Mar. 2, 2016); *Sango v. Bastain et al.*, No. 2:16-cv-14 (W.D. Mich. Mar. 2, 2016); *Sango v. Desselier*, No. 2:16-cv-13 (W.D. Mich. Mar. 2, 2016); *Sango v. Snyder*, No. 2:16-cv-12 (W.D. Mich. Mar. 2, 2016); *Sango v. Russell*, No. 2:16-cv-45 (W.D. Mich. Mar. 4, 2016); *Sango v. Place*, No. 2:16-cv-23 (W.D. Mich. Mar. 4, 2016); *Sango v. Dessellier et al*., No. 2:16-cv-123 (W.D. Mich. Jun. 10, 2016); *Sango v. Sohlden et al.*, No. 2:16-cv-18 (W.D. Mich. Mar. 13, 2017); *Sango v. West et al.*, No. 1:20-cv-156 (W.D. Mich. Mar. 10, 2020); *Sango v. Kludy et al.*, No. 1:20-cv-174 (W.D. Mich. Mar. 18, 2020), *Sango v. Goinns et al*., No. 2:20-cv-196 (W.D. Mich. Oct. 15,

2020), *Sango v. Goinns et al*, No. 2:20-cv-205 (W.D. Mich. Oct. 15, 2020); *Sango v. Scheoder*, No. 2:21-cv-7 (W.D. Mich. Apr. 27, 2021); *Sango v. Fleury*, No. 2:22-cv-17 (W.D. Mich. Feb. 10, 2022); *Sango v. Naeyaert*, No. 2:22-cv-153 (W.D. Mich. Sept. 15, 2022).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is currently incarcerated at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. He sues Acting Assistant Deputy Warden Unknown Naeyeart and Correctional Officers Unknown Patrick and Unknown Picard. Plaintiff contends that he provided information to Resident Unit Manager Hubble (not a party) that staff were offering drugs to inmates in exchange for them stabbing others for writing grievances.[2] (ECF No. 1, PageID.2.) Hubble told him to leave her office and then falsely accused Plaintiff of threatening her. (*Id.*) When Plaintiff was sent to segregation, he noticed that inmates were "getting high" and thought that staff were bringing the drugs into LMF. (*Id.*) Other inmates thought that Plaintiff was reporting them and issued "a state[-]wide 'green light' on [his] life." (*Id.*) Plaintiff contends that pursuant to that "green light," if he goes to any general population unit, gang members will be ordered by their leadership to kill him. (*Id.*) Plaintiff notified Defendant Naeyeart of the issue, but he ignored it. (*Id.*) When Plaintiff wrote to Internal Affairs, Defendant Naeyeart re-classified him to general population. (*Id.*)

Plaintiff avers further that Hubble forwarded a misconduct he received to the Michigan Parole Board and asked the Board to defer his parole date. (*Id.*) Plaintiff wrote to the Board and asked them to review video footage for the time when Hubble said Plaintiff threatened her. (*Id.*) The Board wrote back and told Plaintiff that it wanted to "see [him] immediately in a secured location." (*Id.*) On August 2, 2022, Plaintiff was escorted to a steel cage by Officers Hoover and

---

[2] Plaintiff references his pending lawsuit in *Sango v. Fleury*, No. 2:20-cv-213 (W.D. Mich.). In that matter, Plaintiff claims that Fleury and other MDOC officials have retaliated against him for filing grievances. Defendant Fleury filed a motion for summary judgment, which the Court denied on August 15, 2022. Order, *Sango v. Fleury*, No. 2:20-cv-213 (W.D. Mich.), (ECF No. 38). A jury trial scheduled for November 14, 2022, was cancelled and Plaintiff's case dismissed with prejudice because Plaintiff refused to prosecute. Order and Judgment, *Sango v. Fleury*, No. 2:20-cv-213 (W.D. Mich.) (ECF Nos. 93, 94). Thus, the facts upon which this case depends have been conclusively resolved against Plaintiff.

Kanass (not parties). Over a video conference, a Board member told Plaintiff that she was recommending that he be released pursuant to his county jail detainer. (*Id.*) Plaintiff claims that his conviction was overturned and that he was resentenced to 178 days in county jail, but that he was never sent there. (*Id.*)

On August 11, 2022, Defendant Naeyeart was near Plaintiff's cell and told him that he looked "relaxed" and that he would be the next inmate to be sent to general population. (*Id.*) Five days later, Defendant Naeyeart tried to get Plaintiff to sign paperwork to be sent to general population. (*Id.*) On August 18, 2022, Defendant Patrick gave Plaintiff an empty food tray and ignored Plaintiff's complaint. (*Id.*, PageID.3.) After lunch that day, Defendant Picard told Plaintiff that he was going to general population. (*Id.*) Plaintiff responded that it "would be foolish for [him] to go to [his] death." (*Id.*) Defendant Picard responded that Plaintiff was going to general population even if they had to come in, drag him out, and "beat [his] a**." (*Id.*) He told Plaintiff that they had permission from Defendant Naeyeart to "stuff a sock down your throat and say you killed yourself." (*Id.*) Plaintiff claims "[t]hey then cut the air in [his] cell down and it[']s hard to breath[e]." (*Id.*) In a declaration submitted with his complaint, Plaintiff suggests that he has been poisoned. (ECF No. 2-1, PageID.12.) He suggests that he got "sickly ill" on August 20, 2022, after Defendant Picard gave him a food tray. (ECF No. 2, PageID.9.)

Plaintiff seeks injunctive relief in the form of the Court contacting the Michigan State Police and "have them do a drug test on all inmates in [LMF] segregation and test walls for drug residue." (ECF No. 1, PageID.3.) Plaintiff suggests that if it is determined that MDOC employees are allowing drugs "to be smoked at these amounts," Plaintiff should be placed in the custody of the Federal Bureau of Prisons. (*Id.*) Plaintiff contends that he will not kill himself and that if he "should be found dead it will not be by [his] own hand, it will be by MDOC employees." (*Id.*)

Allegations that Defendants Naeyeart and Picard have threatened to harm Plaintiff and that they have ignored threats by other inmates to harm Plaintiff certainly suggest a danger. However, as the Court recently noted, such threats of harm have been Plaintiff's "go to" allegation to avoid the "three strike" consequence of previously filing meritless lawsuits. Earlier this year, this Court twice concluded that similar threats alleged by Plaintiff were insufficient to demonstrate imminent danger because Plaintiff did not allege that he suffered any physical injury or that anything actually happened to him. *See Sango v. Naeyaert*, No. 2:22-cv-153 (W.D. Mich. Aug. 19, 2022) (concluding that Plaintiff's allegations that inmates gave a "green light" to have Plaintiff murdered and that staff, including Defendant Naeyeart, ignored his threats so that he would be killed were insufficient); *Sango v. Fleury*, No. 2:22-cv-17 (W.D. Mich. Feb. 10, 2022) (threats to have Plaintiff and his mother killed and to ensure that Plaintiff contracted the Omicron COVID-19 variant were not sufficient to demonstrate imminent danger).

Moreover, in 2021, Plaintiff alleged that an officer told prisoners to stab Plaintiff. *See Sango v. Scheoder*, No. 2:21-cv-7, 2021 WL 1624610, at *4 (W.D. Mich. Apr. 27, 2021). The Court noted that while such an allegation suggested danger, it could make no assessment of whether the threat posed an imminent risk because Plaintiff had provided no information concerning when the threat was made. *Id.* In 2020, the Court concluded that an officer's threat that Plaintiff "should stop being a 'smart ass' lest he end up harmed by another prisoner" was not "sufficiently 'real and proximate'" to support an inference of imminent harm. *See Sango v. Goinns*, No. 2:20-cv-196, 2020 WL 6074014, at *3 (W.D. Mich. Oct. 15, 2020). In 2015, this Court twice concluded that similar threats alleged by Plaintiff were insufficient to demonstrate imminent danger. *See Sango v. Eryer*, No. 1:15-cv-71, 2015 WL 630493, at *3 (W.D. Mich. Feb. 12, 2015) (concluding that Plaintiff's allegations that officers threatened that he would be dead failed to

demonstrate that physical injury was imminent); *Sango v. Mich. Office of Admin. Hearings and Rules*, No. 1:14-cv-1272, 2015 WL 163547, at *4 (W.D. Mich. Jan. 13, 2015) (concluding that Plaintiff's claims that officers had plotted to kill him and had a $200.00 "hit" on him were "unsupported by any plausible allegations of fact" to suggest that Plaintiff was in imminent danger).

The Eastern District of Michigan has also rejected Plaintiff's allegations of such threats as demonstrative of imminent danger on at least one occasion. *See Sango v. Grand*, No. 2:14-cv-14060, 2014 WL 5511812, at *2 (E.D. Mich. Oct. 31, 2014). In that matter, Plaintiff alleged that he was in danger because "various unnamed prison guards have encouraged various gang members at the Ionia Maximum Facility to stab" him. *Id.* The court found that "Plaintiff's conclusory allegations that people are trying to kill him are completely unsupported by any evidentiary material, thus, he is not entitled to invoke the imminent danger exception to § 1915(g)." *Id.*

Reviewing the frequency with which Plaintiff has faced such threats, and the dearth of any factual allegations to show action to carry them out, leads the Court to conclude that they "are described with insufficient facts and detail to establish that he is in danger of imminent physical injury . . . ." *Rittner v. Kinder*, 280 F. App'x 796, 798 (6th Cir. 2008) (footnote omitted). Based on Plaintiff's allegations, they are not sufficiently "real and proximate." *Vandiver*, 727 F.3d at 585 (quoting *Rittner*). That is not to say that they are "ridiculous . . . baseless . . . fantastic –or delusional . . . irrational or wholly incredible." *Id.* They are simply insufficient.

In the instant case, Plaintiff does not allege that he suffered any physical injury. Despite the threats to have Plaintiff killed or harmed, Plaintiff does not allege that anything actually happened to him. While the Court does not condone the making of such threats by officers or other

prisoners, Plaintiff's insufficient allegations, combined with the frequency with which Plaintiff alleges he has faced such threats, do not demonstrate that physical injury is imminent.

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated:    November 16, 2022                  /s/ Robert J. Jonker
                                             Robert J. Jonker
                                             United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**

9